## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRUCE W. KELLY,** ) | |
| ) | |
| Plaintiff, ) | Case No.:_____ |
| ) | |
| v. ) | |
| ) | |
| **KEEBLER COMPANY,** ) | **JURY TRIAL DEMANDED** |
| d/b/a Kellogg Snacks ) | |
| <u>Serve Authorized Agent at</u>: ) | |
| **801 Sunshine Road** ) | |
| **Kansas City, KS 66115** ) | |
| ) | |
| and ) | |
| ) | |
| **KELLOGG COMPANY,** ) | |
| <u>Serve Authorized Agent at</u>: ) | |
| **801 Sunshine Road** ) | |
| **Kansas City, KS 66115** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff, Bruce W. Kelly, by and through his undersigned counsel, and hereby states and alleges as follows for his causes of action against Defendants Keebler Company and Kellogg Company:

## PARTIES

1. **Plaintiff Bruce W. Kelly** is a Kansas resident who, at all times relevant to the allegations herein, resided in Kansas.

2. **Defendant Keebler Company** d/b/a Kellogg Snacks ("**Keebler**") is a Delaware corporation operating and conducting business in the State of Kansas at the KC Bakery located at 801 Sunshine Road, Kansas City, Kansas 66115 ("KC Bakery").

3. **Defendant Kellogg Company** ("**Kellogg**") is a Delaware corporation operating and conducting business in the State of Kansas at the KC Bakery.

4. At all times relevant to the allegations herein, Defendants Keebler and Kellogg (collectively, "Defendants") each extended sufficient control over Plaintiff's employment and otherwise shared or jointly determined matters governing the terms and conditions of Plaintiff's employment, making Defendants joint employers of Plaintiff as it relates to the facts, circumstances and claims set forth herein.

5. At all times relevant to the allegations herein, Defendants employed Plaintiff as the Health and Safety Manager for the KC Bakery.

6. At all times relevant to the allegations herein, Defendant Keebler identified itself as Plaintiff's employer on his IRS Form W-2s.

7. At all times relevant to the allegations herein, the work email assigned to Plaintiff and to the other employees at the KC Bakery contained the domain name "@kellogg.com."

8. Upon information and belief, at all times relevant to the allegations herein, both Defendants maintained control and had the authority to hire and fire employees at the KC Bakery, including Plaintiff.

9. Upon information and belief, at all times relevant to the allegations herein, both Defendants had the ability to, and did in fact, set the conditions of employment, including the safety standards, for employees at the KC Bakery, including Plaintiff.

10. Upon information and belief, at all times relevant to the allegations herein, both Defendants controlled the employee records for those employees at the KC Bakery, including Plaintiff.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the claims alleged because Plaintiff asserts federal claims alleging discrimination and retaliation under the Americans with Disabilities Act, the Age Discrimination in Employment Act, and claims of interference and retaliation under the Family and Medical Leave Act.

12. Jurisdiction is proper over Defendants in that they transacted business in the State of Kansas; Defendants employed and provided benefits to employees, including Plaintiff, in the state of Kansas; Defendants operated the KC Bakery in the state of Kansas; and the discriminatory and wrongful acts alleged herein occurred in the State of Kansas.

13. Venue is proper in this Court as the alleged acts, omissions and occurrences giving rise to the claims alleged herein occurred in Wyandotte County, Kansas which is within the jurisdiction of the District of Kansas.

## CONDITION PRECEDENT

14. Plaintiff filed a timely Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on or about November 27, 2018.

15. In response, the EEOC generated two charge numbers: 563-2019-00454 and 563-2019-00714. A true and accurate copy of Charge Number 5632019-00454 is attached hereto as **Exhibit A** and incorporated by reference. A true and accurate copy of Charge Number 563-2019-00714 is attached hereto as **Exhibit B** and incorporated herein by reference.

16. The EEOC thereafter issued Notices of Right to Sue on both Charges dated May 29, 2019. A true and accurate copy of the Notice of Right to Sue for Charge Number 563-2019-00454 and 563-2019-00714 is attached hereto as **Exhibit C** and incorporated herein by

3

reference. A true and accurate copy of the Notice of Right to Sue for Charge Number 563-2019-00714 is attached hereto as **Exhibit D** and incorporated herein by reference.

17. This action is timely filed with the Court and Plaintiff has met all conditions precedent to the filing of this action.

## FACTUAL ALLEGATIONS

18. Since 2011, Plaintiff has worked for Defendants as the Health and Safety Manager ("H&S Manager") at the KC Bakery.

19. At the age of 65, Plaintiff was the oldest person on the KC Bakery's "Leadership Team."

20. Starting in or around mid-2016, Defendants started a process of transitioning H&S Manager positions at their various plants to higher-level positions of Health, Safety *and Environmental* Managers ("HS&E Managers").

21. At around the same time, Defendants started their efforts to transition Plaintiff's H&S Manager position at the KC Bakery to the higher-level position of HS&E Manager.

22. In or about April 21, 2016, Plaintiff filed a Charge of Discrimination against his employers Kellogg Company and Keebler Company.

23. After receiving his Right to Sue Notices with respect to his Charge of Discrimination, on or about February 8, 2017, Plaintiff filed in this Court a Complaint against Defendants, alleging violations of the Americans with Disability Act (ADA/ADAAA), the Age Discrimination in Employment Act ("ADEA"), and the Family Medical Leave Act ("FMLA"). Case No. 2:17-CV-02085-CM-GEB ("Kelly I Lawsuit").

24. Plaintiff's Complaint filed in the Kelly I Lawsuit contained allegations against Jason Climie, a former manager of the KC Bakery.

4

25. On or around August 18, 2017, the parties executed a Settlement Agreement to resolve the Kelly I Lawsuit.

26. On October 17, 2017, the parties filed a joint stipulation of dismissal with prejudice of the Kelly I Lawsuit.

27. However, following the resolution and dismissal of the Kelly I Lawsuit, Defendants continued to engage in discriminatory, harassing, and retaliatory conduct toward Plaintiff.

28. After dismissal of the Kelly I Lawsuit, Mr. Climie, who was the subject of Plaintiff's prior complaints of discrimination and retaliation, refused to assist in transitioning Plaintiff from the H&S Manager position to the higher-level HS&E Manager position.

29. As a result of this refusal, Plaintiff continued in his role as the H&S Manager, and another employee continued in his role handling the environmental matters.

30. Meanwhile, other H&S Managers were being transitions into the HS&E Manager positions without the need to interview for the new role.

31. In or around early January 2018, Mr. Climie was replaced by a new Plant Manager, Carol Cruz.

32. Ms. Cruz referred to Mr. Climie as her "mentor" and reported to Mr. Climie.

33. On or around April 11, 2018, Plaintiff, who was suffering from two herniated discs in his lower back, took an FMLA leave for approximately 10 weeks.

34. At the request of Ms. Cruz, while on FMLA, Plaintiff continued to work, handling monthly reports, payroll, and day-to-day issues that were brought to his attention by the safety technicians reporting to him.

35. During his FMLA leave, Plaintiff learned that the employee who had been handling the environmental responsibilities at the KC Bakery had decided to leave, thus paving the way for the environmental responsibilities to be shifted to Plaintiff so that Plaintiff's transition to the HS&E Manager position could be completed.

36. Upon returning from his FMLA leave, in or around June 2018, Plaintiff discussed the completion of his transition to the new HS&E Manager position with Ms. Cruz. Plaintiff advised Ms. Cruz that he was ready, willing, and able to take on these responsibilities.

37. Around the same time, during a Leadership Team presentation, the Senior Vice-President of Kellogg North America, who was visiting the KC Bakery, expressed confidence in his abilities as the H&S Manager and support for Plaintiff's desire to transition to the new role as the HS&E Manager. Ms. Cruz was present during that meeting.

38. Soon thereafter, during Plaintiff's mid-year review, Ms. Cruz claimed, without any support or examples, that members of the Leadership Team had allegedly lost trust in Plaintiff. Ms. Cruz also alleged that Plaintiff needed to be more "engaged."

39. However, Plaintiff had demonstrated his engagement in, and commitment to, the KC Bakery's affairs by, for example, continuing to work during his FMLA leave as Ms. Cruz requested, by responding daily to calls and emails, and handing payroll and monthly reports. Ms. Cruz, however, made no mention of this extra work and "engagement" in Plaintiff's written review.

40. After the review, Plaintiff consulted other members of the Leadership Team to ask whether they had lost trust in him or his abilities, and these members thought Plaintiff must be joking. They were in disbelief at the false allegation against Plaintiff.

41. Plaintiff submitted a written response to Ms. Cruz's review which contained unwarranted criticism against him.

42. On information and belief, Ms. Cruz was discriminating against Plaintiff based on his age, disability/perceived disability, and because he utilized FMLA leave.

43. Further, on information and belief, Ms. Cruz was discriminating and retaliating against Plaintiff based on his prior filing of a Charge of Discrimination and lawsuit against Kellogg Company and Keebler Company in which he made allegations of discrimination and retaliation against Ms. Cruz's predecessor and mentor, Jason Climie.

44. In or around early August 2018, Ms. Cruz met with Plaintiff and told him that the KC Bakery was planning to eliminate his H&S Manager position, post an announcement to fill the new HS&E Manager position, and that his last day at the KC Bakery would be September 16, 2018.

45. Defendants' Human Resources employee, who was also present at the meeting, explained that Plaintiff could interview for the new HS&E Manager position. The Human Resources employee also advised Plaintiff of the consequences if Plaintiff was not hired for the new position – he would be terminated.

46. On or around September 4, 2018, Plaintiff interviewed with Ms. Cruz and two other employees for the position of the HS&E Manager. During the interview, it became obvious that Ms. Cruz did not review Plaintiff's resume or consider him seriously for the new position, because she seemed surprised when she learned that Plaintiff had environmental and corporate experience.

47. On or around September 13, 2018, Plaintiff learned that he was not hired for the HS&E Manager position, despite his experience, qualifications and work performance during his employment with the Defendants.

48. Instead, upon information and belief, Defendants offered the HS&E Manager position to a substantially younger person, a female in her 30s or 40s (substantially younger than Plaintiff, then 65 years old), who had less relevant experience and qualifications than Plaintiff.

49. On or around September 16, 2018, Defendants terminated Plaintiff's employment.

50. Upon information and belief, no other H&S Manager position was eliminated at the Defendants' other locations.

51. Instead, at other locations, the transition to HS&E Manager positions was effectuated by consolidating the H&S Manager positions with positions responsible for environmental matters.

52. Defendants are, and were at all relevant times, "employers" within the definitions provided by ADA/ADAAA, ADEA, and the FMLA.

53. At all relevant times, all individuals mentioned herein were employed by Defendants and were acting within the scope of their employment and/or on behalf of Defendants, and/or their conduct was approved, encouraged, and/or ratified by Defendants, thereby making Defendants responsible for the above mentioned conduct under a theory of respondeat superior.

### COUNT I
### ADA – Discrimination
### (42 U.S.C. § 12101, *et seq.*)

54. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

55. The ADA/ADAAA prohibits discrimination against a person who has or is regarded as having a physical impairment that substantially limits one or more major life activities.

56. Plaintiff's herniated discs constituted a physical impairment that substantially limited his major life activities, including but not limited to walking, standing, lifting, and bending.

57. Plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodation.

58. The conduct and actions by the above-described perpetrators were performed on the basis of Plaintiff's disability/perceived disability and constitute discrimination based on disability.

59. By eliminating Plaintiff's position of H&S Manager, failing to hire Plaintiff for the newly created position of HS&E Manager, and terminating Plaintiff's employment, Defendants engaged in conduct prohibited by the ADA/ADAAA, 42 U.S.C. §12101 *et. seq.*

60. Plaintiff suffered tangible adverse employment actions as a result of Defendants' conduct as referenced herein, including but not limited to the elimination of his H&S Manager position, the failure to hire him for the HS&E Manager position in favor of a younger and lesser qualified candidate, and the wrongful termination of Plaintiff's employment.

61. The conduct of Defendants, described herein, would have detrimentally affected a reasonable person in Plaintiff's position.

62. Defendants' unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

63. Defendants' treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person who has, or is regarded as having, a physical impairment that substantially limits one or more major life activities.

64. Supervisory and management-level employees, including Human Resources administrators, knew or should have known of the discrimination, but failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop discrimination against Plaintiff based on his disability/perceived disability.

65. Defendants' actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendants to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE Plaintiff prays for judgment in his favor and against Defendants on Count I of his Complaint for a finding that he has been subjected to unlawful discrimination as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of front pay; for an award of back pay; pre-judgment and post-judgment interest as provided by law; for his costs expended herein; reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper.

## COUNT II
## ADA – Retaliation
### (42 U.S.C. § 12203, *et seq.*)

66. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

67. The ADA/ADAAA prohibits retaliation against an individual who has opposed disability discrimination and/or retaliation under the ADA, by, for example, filing a charge

and/or participating in litigation.

68. Plaintiff previously filed the Kelly I Lawsuit and its related Charge of Discrimination, alleging ADA/ADAAA discrimination and retaliation claims, participated in that Lawsuit, and executed the Settlement Agreement to resolve the Lawsuit.

69. Plaintiff's actions in connection with the Kelly I Lawsuit constituted protected activities.

70. As a result of Plaintiff's protected activities, Defendants subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to eliminating Plaintiff's H&S Manager position, failing to hire Plaintiff for the newly created HS&E Manager position, and terminating Plaintiff's employment.

71. Defendants' retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

72. At the time Defendants retaliated against Plaintiff, Defendants knew that such retaliation was unlawful.

73. Defendants' unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

74. Defendants' actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendants to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE Plaintiff prays for judgment in his favor and against Defendants on Count II of his Complaint for a finding that he has been subjected to unlawful retaliation as prohibited

by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of front pay; for an award of back pay; pre-judgment and post-judgment interest as provided by law; for his costs expended herein; pre-judgment and post-judgment interest as provided by law; for his costs expended herein; reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper.

### COUNT III
### ADEA – Discrimination
### (29 U.S.C. § 621, *et seq*.)

75. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

76. Plaintiff, at the age of 65, is within the protected age class, and was the oldest person on the KC Bakery's "Leadership Team" reporting to Ms. Cruz, the KC Bakery Manager.

77. As a result of his age, Defendants eliminated Plaintiff's H&S Manager position, failed to hire him for the newly created HS&E Manager position, and terminated his employment.

78. Defendants, at all relevant times, had actual and constructive knowledge of the conduct described herein.

79. Defendants failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

80. Defendants' unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

81. The actions and conduct of the above-described perpetrators as set forth herein were intentional, willful, malicious, grossly negligent, reckless, extreme, and outrageous and exhibited a conscious disregard for Plaintiff's rights and the rights of others, and therefore Plaintiff is entitled to liquidated damages.

WHEREFORE Plaintiff prays for judgment against Defendants on Count III of his Complaint for a finding that he has been subjected to discrimination in violation of the ADEA; for reinstatement or an award of front pay; for an award of back pay, including lost bonuses, cost of living increase and other benefits including interest; for an award of compensatory, liquidated and/or punitive damages; pre-judgment and post-judgment interest as provided by law; for his costs herein expensed; reasonable attorneys' fees; and for such other relief as this court deems just and proper.

### COUNT IV
### ADEA – Retaliation
### (29 U.S.C. § 623, *et seq*.)

82. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

83. The ADEA prohibits retaliation against any individual who opposes discrimination and/or retaliation under the ADEA by, for example, filing a charge or participating in litigation.

84. Plaintiff previously filed in this Court the Kelly I Lawsuit and its related Charge of Discrimination, alleging ADEA discrimination and retaliation claims, participated in that Lawsuit, and executed the Settlement Agreement to resolve the Lawsuit.

85. Plaintiff's actions in connection with the Kelly I Lawsuit constituted protected activities.

86. By reason and as a result of Plaintiff's protected activity, Defendants retaliated against Plaintiff, including but not limited to eliminating Plaintiff's H&S Manager position, failing to hire him for the newly created HS&E Manager position, and terminating his employment.

87. The actions Defendants took against Plaintiff might well have persuaded a reasonable person in the same or similar circumstances as Plaintiff to not participate in the protected activities.

88. Defendants would not have taken material adverse actions against Plaintiff but for Plaintiff's acts of filing the Kelly I Lawsuit and its related Charge of Discrimination, which alleged ADEA discrimination and retaliation claims, participating in the Lawsuit and executing the Settlement Agreement.

89. Plaintiff's protected activities as stated herein were a determining factor in Defendants' decision to eliminate Plaintiff's H&S Manager position and to refuse to hire him for the newly created HS&E Manager position, effectively terminating Plaintiff.

90. Defendants' unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

91. Defendants' actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendants to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE Plaintiff prays for judgment against Defendants on Count IV of his Complaint for a finding that he has been subjected to unlawful retaliation in violation of the

ADEA; for reinstatement or an award of front pay; an award of back pay, including lost bonuses, cost of living increase and other benefits including interest; for an award of compensatory, liquidated and/or punitive damages; pre-judgment and post-judgment interest as provided by law; for his costs herein expensed; reasonable attorneys' fees; and for such other relief as this court deems just and proper.

## COUNT V
## FMLA Retaliation

92. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

93. Plaintiff was employed by Defendants and worked more than 1250 hours in the 12 months prior to his request for FMLA leave in April 2018.

94. Plaintiff worked for Defendants at a location where 50 or more employees of Defendants worked within 75 miles.

95. Plaintiff was a valued and accomplished employee before he took FMLA leave.

96. Plaintiff exercised his FMLA rights and took FMLA leave for 10 weeks, starting in approximately April 11, 2018.

97. In exercising his rights under the FMLA, Plaintiff complied with all of Defendants' policies and procedures for using or taking FMLA leave.

98. Immediately upon Plaintiff's return from FMLA leave, and as a result of his taking FMLA leave, Defendants eliminated Plaintiff's H&S Manager position and failed to hire him for the newly created HS&E Manager position.

99. Defendants retaliated against Plaintiff as a result of his decision to exercise his rights under the FMLA.

100. Plaintiff was treated less favorably than other employees who had not requested leave under the FMLA.

101. Defendants' actions against and treatment of Plaintiff were those which a reasonable person would have found materially adverse.

WHEREFORE Plaintiff prays for judgment against Defendants on Count V of his Complaint for a finding that he has been subjected to unlawful retaliation in violation of the FMLA; for reinstatement; for an award of back pay, including lost bonuses, cost of living increase and other benefits including interest; for an award of compensatory and liquidated damages; equitable relief as may be appropriate; reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and such other and further relief as to the Court deems just and equitable.

## COUNT VI
## FMLA Interference

102. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

103. Plaintiff was a valued and accomplished employee and had not been disciplined, placed on a performance improvement plan, or given a poor performance evaluation before he took FMLA leave.

104. Plaintiff was employed by Defendants and worked more than 1250 hours in the 12 months prior to his request for FMLA leave in April 2017. Plaintiff worked for Defendants at a location where 50 or more employees of Defendants worked within 75 miles. Thus, Plaintiff was entitled to FMLA leave.

105. Plaintiff exercised his FMLA rights and took FMLA leave for 10 weeks, starting in approximately April 11, 2018.

106. In exercising his rights under the FMLA, Plaintiff complied with all of Defendants' policies and procedures for using or taking FMLA leave.

107. Upon Plaintiff's request to exercise his FMLA rights, Ms. Cruz asked Plaintiff what work he could perform during his FMLA leave, and expected him to continue performing work during his FMLA leave.

108. While on his FMLA leave, at Ms. Cruz's request, Plaintiff continued to work, handling monthly reports, payroll and day-to-day issues that were brought to his attention by the safety technicians in his group.

109. By requesting Plaintiff to continue performing some of his work duties while Plaintiff was on FMLA leave, Defendants interfered with Plaintiff's right to take FMLA leave.

WHEREFORE Plaintiff prays for judgment against Defendants on Count VI of his Complaint for a finding that he has been subjected to unlawful interference in violation of the FMLA; for reinstatement or an award of front pay; for an award of back pay, including lost bonuses, cost of living increase and other benefits including interest; for an award of compensatory and liquidated damages; equitable relief as may be appropriate; reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and such other and further relief as to the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all counts of the Complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas, as the place of trial.

**HOLMAN SCHIAVONE, LLC**

By:    */s/ Kathleen E. Mannion*
Kirk D. Holman, KS Bar #19558
Kathleen E. Mannion, KS Bar #25362
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL: (816) 283-8738
FAX: (816) 283-8739
KHolman@hslawllc.com
KMannion@hslawllc.com

**ATTORNEYS FOR PLAINTIFF**